## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| POIRRIER, et al. | CIVIL ACTION |
|---|---|
| VERSUS | CASE NO. 17-684 |
| RICHARDSON, et al. | SECTION: "G"(1) |

## ORDER

Pending before the Court is "Defendants' Rule 56 Motion for Partial Summary Judgment."[1] Plaintiffs Chase Poirrier ("Poirrier") and Lisa Huber ("Huber") (collectively "Plaintiffs") allege that Poirrier suffered separate and independent injuries from separate acts of medical malpractice.[2] As a result, Plaintiffs further allege that there are two separate "caps" applicable to Plaintiffs' claims pursuant to the Louisiana Medical Malpractice Act ("LMMA").[3] Defendants Donald Richardson, M.D. ("Richardson"), Melanie Mire, PA-C ("Mire"), and Southern Pain and Anesthesia Consultants, LLC d/b/a Southern Pain and Neurological Consultants, LLC ("Southern Pain") (collectively "Defendants") move for partial summary judgment declaring that there is one "cap" applicable to Plaintiffs' claims pursuant to the LMMA.[4]

## I. Background

According to Plaintiffs' "First Supplemental and Amending Complaint," Poirrier has had a history of traumatic brain injury secondary to a motorbike accident that occurred in August of

---

[1] Rec. Doc. 38 at 1.

[2] Rec. Doc. 10 at 5.

[3] *Id.*

[4] Rec. Doc. 38 at 1.

2014.[5] Richardson performed an insertion of a deep brain stimulator on Poirrier on May 22, 2008.[6] On March 3, 2009, Richardson performed an insertion of a SyncroMed pump and catheter with baclofen to control Poirrier's spasticity.[7] On March 16, 2009, Richardson performed a revision procedure due to a fall by Poirrier.[8] From then until May 2015, Richardson, Mire, and/or other physicians/physician extenders working with Richardson and for Southern Pain saw Poirrier approximately once every six weeks for check-ups to manage Poirrier's baclofen therapy.[9] Plaintiffs allege that Poirrier displayed little effect from the baclofen therapy at least since September 2012, despite being administered extraordinarily high doses.[10]

On May 11, 2015, Poirrier saw a neurosurgeon in Mississippi, Dr. Edward Cullom ("Cullom"), in order to replace his pump and brain stimulator.[11] During surgery, Cullom confirmed that the pump's catheter was not within the intrathecal space.[12] Plaintiffs allege that Cullom then consulted with Defendants about the out-of-place catheter and Poirrier's dosage of baclofen, and one of the Defendants, allegedly Mire, advised that it had very likely recently dislodged.[13] Moreover, Plaintiffs state that Mire instructed Cullom that Poirrier was to receive a 600 microgram

---

[5] Rec. Doc. 10 at 2.

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

per day dose of baclofen.[14] After Poirrier was administered this dose of baclofen, he suffered baclofen toxicity and associated urinary tract complications which resulted in an admission to the intensive care unit and a procedure to remove the baclofen from the pump.[15]

Plaintiffs allege that the events leading up to May 11, 2015, "denied [Poirrier] the benefits of effective baclofen intrathecal therapy during a critical time in his development and recovery from his brain injury."[16] Plaintiffs further allege that the wrongful acts on May 11, 2015, caused Poirrier to suffer from baclofen toxicity and associated urinary tract complications.[17]

Plaintiffs filed the complaint on February 1, 2017[18] and an amended complaint on February 20, 2017.[19] Defendants filed the instant "Defendants' Rule 56 Motion for Partial Summary Judgment" on December 1, 2017.[20] Defendants also requested oral arguments for the instant motion on December 1, 2017,[21] and the Court held oral arguments on December 20, 2017.[22]

---

[14] *Id.* at 4.

[15] *Id.*

[16] *Id.* at 5.

[17] *Id.*

[18] Rec. Doc. 1.

[19] Rec. Doc. 10.

[20] Rec. Doc. 38.

[21] Rec. Doc. 39.

[22] Rec. Doc. 46.

## II. Parties' Arguments

### A. *Defendants' Motion for Partial Summary Judgment*

#### 1. *Defendants Argue that the Louisiana Medical Malpractice Act Caps Recovery for All Claims*

Defendants first assert, "The law is clear that there is but a single 'cap' applicable to malpractice claims for injuries to a patient."[23] Citing La. R.S. 40:1231.2(B)(1), or the Louisiana Medical Malpractice Act, Defendants emphasize that the Act provides, "The total amount recoverable for all malpractice claims for injuries to or death of a patient . . . shall not exceed five hundred thousand dollars plus interest and cost."[24] Moreover, La. R.S. 40:1231.2(B)(2) states, "A healthcare provider qualified under this Part is not liable for an amount in excess of one hundred thousand dollars plus interest thereon . . . for all malpractice claims because of injuries to or death of any one patient."[25] Defendants argue that "the use of plural nouns (malpractice claims, injuries), rather than the singular form of the word" indicates an intention to limit recovery for all malpractice claims for injuries to a patient.[26] Defendants further assert that Louisiana courts have held that consortium and *Lejeune* claims "are extinguished to the extent that they exceed the single cap on damages arising out of a single injury, as such claims are derivative of the patient's claims."[27]

---

[23] Rec. Doc. 38-1 at 6.

[24] *Id.* at 7 (citing LA. STAT. ANN. § 40:1231.2(B)(1) (2015)).

[25] *Id.* (citing LA. STAT. ANN. § 40:1231.2(B)(2)).

[26] *Id.* at 8.

[27] *Id.*

### 2. Defendants Argue that There Is One Injury in the Present Case

Defendants assert, "Despite [P]laintiffs' characterization of the alleged malpractice and/or injury of Poirrier as separate acts and injuries in an attempt to recover double, there was only one treater, one alleged malpractice and one injury."[28] Thus, Defendants argue that only one "cap" must apply in the present case.[29] Moreover, Defendants assert that they have not found a case in which the LMMA was interpreted to provide for two "caps," so Plaintiffs will not be able to meet the burden of proof of showing that more than one "cap" should apply.[30]

### B. Plaintiffs' Memorandum in Opposition to Defendants' Motion

#### 1. Plaintiffs Argue that Defendants' Assertions Are Mutually Exclusive

According to Plaintiffs, Defendants previously argued that the LMMA does not apply to Plaintiffs' claims because there was no patient-physician relationship between Poirrier and Defendants on May 11, 2015.[31] However, Plaintiffs assert, Defendants now argue that the LMMA applies to Defendants' actions on May 11, 2015, and that Defendants were acting within the same "course of baclofen management conducted in their office."[32] Plaintiffs assert that these arguments are mutually exclusive.[33] Plaintiffs argue, "If it is true that there is only one cap, it would be

---

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] Rec. Doc. 42 at 4–5 (citing Rec. Doc. 19-1 at 3–6).

[32] *Id.* at 5.

[33] *Id.*

5

because the Court agrees with Defendants' original position and finds that the LMMA does not apply to the toxicity claim."[34]

### *2. Plaintiffs Argue that Two Separate Caps Apply Because Poirrier Suffered Two Separate Injuries from Two Different Deviations from the Standard of Care*

Plaintiffs argue, "The Louisiana Supreme Court has made it clear that it is not the intent of the LMMA to simply lump all of a patient's claims under one 'cap' when the injuries are entirely separate and are the results of different breaches of the standard of care." Thus, Plaintiff asserts, Louisiana courts have rejected Defendants' interpretation of the LMMA.[35]

First, Plaintiffs assert that the Louisiana Supreme Court noted in *Turner v. Massiah* that two caps may be possible in a case with two torts and two injuries.[36] However, in that case, Plaintiffs state that the court did not find two caps, since the court held that the plaintiff's breast cancer was a single, indivisible injury.[37]

Second, Plaintiffs argue that the Louisiana First Circuit Court of Appeal in *Maraist v. Alton Ochsner Medical Foundation* similarly stated that there could be multiple caps under the LMMA, but it only found a single injury after a child suffered severe neurological impairment after a delay in diagnosing bacterial meningitis.[38] According to Plaintiffs, the court stated that "if the damage

---

[34] *Id.*

[35] *Id.* at 5–6.

[36] *Id.* at 6 (citing 94-2548 (La. 6/16/95); 656 So. 2d 636, 640).

[37] *Id.* (citing 646 So. 2d at 640).

[38] *Id.* (citing 2000-0404 (La. App. 1 Cir. 4/4/01); 808 So. 2d 566, 569–70).

6

or injury can be divided into two or more parts . . . then each part constitutes, in effect, a separate injury under La. R.S. 40:1229.42(B)(1)."[39]

Plaintiffs assert that "Poirrier's injuries can easily be divided into two parts."[40] Plaintiffs state that the first injury resulted from the "deprivation of the benefits of baclofen therapy from September 2012 until May 2015 due to Defendants' failure to diagnose a catheter dislodgment."[41] Plaintiffs contend that this failure to diagnose led to increased spasticity for years.[42]

Plaintiffs state that Poirrier "suffered a completely divisible and separate injury on May 11, 2015, when he developed Baclofen toxicity as the result of erroneous information communicated by Dr. Richardson and Physician Assistant Mire to Dr. Cullom."[43] Plaintiffs state that Poirrier required additional surgery and hospital admission to resolve this overdose.[44] Plaintiffs conclude that considering these injuries as the same "'mismanaged baclofen therapy'. . . would be akin to saying that a surgeon who removed the wrong kidney from a patient, and then amputated his wrong leg days later, was guilty of only the singular wrongful act of 'mismanaged surgical therapy.'"[45]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment

---

[39] *Id.* at 7 (citing 808 So. 2d at 570)

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] *Id.* at 8.

[45] *Id.*

7

as a matter of law."[46] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[47] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[48] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[49] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[50]

The party seeking summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[51] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[52] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[53] The nonmovant's burden of

---

[46] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[47] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[48] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[49] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[50] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[51] *Celotex*, 477 U.S. at 323.

[52] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

[53] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty*, 477 U.S. 242, 248–49 (1996)).

demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[54] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[55]

At issue here is the interpretation of La. R.S. 40:1231.2(B), or the Louisiana Medical Malpractice Act. It provides:

> (1) The total amount recoverable for all malpractice claims for injuries to or death of a patient, exclusive of future medical care and related benefits as provided in R.S. 40:1231.3, shall not exceed five hundred thousand dollars plus interest and cost.
> (2) A health care provider qualified under this Part is not liable for an amount in excess of one hundred thousand dollars plus interest thereon accruing after April 1, 1991, and costs specifically provided for by this Paragraph for all malpractice claims because of injuries to or death of any one patient. The sole cost for which a health care provider qualified under this Part may be assessed by a trial court shall be limited to the cost incurred prior to the rendering of a final judgment against the health care provider, not as a nominal defendant, after a trial on a malpractice claim, including but not limited to, costs assessed pursuant to Code of Civil Procedure Article 970 in any instance where the board was not the offeror or offeree of the proposed settlement amount. The health care provider shall not be assessed costs in any action in which the fund intervenes or the health care provider is a nominal defendant after there has been a settlement between the health care provider and the claimant.
> (3)(a) Any amount due from a judgment or settlement or from a final award in an arbitration proceeding which is in excess of the total liability of all liable health care providers, as provided in Paragraph (2) of this Subsection, shall be paid from the patient's compensation fund pursuant to the provisions of R.S. 40:1231.4(C).
> (b) The total amounts paid in accordance with Paragraphs (2) and (3) of this Subsection shall not exceed the limitation as provided in Paragraph (1) of this Subsection.

---

[54] *Little*, 37 F.3d at 1075.

[55] *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987); Fed. R .Civ. P. 56(c)(2).

## IV. Analysis

Defendants argue that the language of La. R.S. 40:1231.2(B) provides a limitation of recovery for all malpractice claims for injuries to a patient.[56] Defendants specifically point to the plural nature of "claims" and "injuries" to support this argument.[57] Defendants further argue that there is no law to support a deviation from the interpretation that a single cap applies to all of a patient's claims.[58]

In response, Plaintiffs argue that the Louisiana Supreme Court noted that there may be multiple caps in *Turner*, but it concluded that there was only one injury in that case.[59] Moreover, Plaintiffs further argue that in *Maraist*, the Louisiana First Circuit Court of Appeal, interpreting *Turner*, stated that there may be more than one cap if there are separate injuries, but it similarly concluded that there was only one injury in that case.[60] Plaintiffs assert that the present situation presents two "severable" injuries.[61] Plaintiffs argue that Poirrier first suffered from increased spasticity because the catheter dislodgment prevented Poirrier from receiving proper doses of baclofen treatment.[62] Plaintiffs assert that Poirrier then suffered from baclofen toxicity due to receiving an overdose of baclofen treatment after the catheter was properly connected.[63] Plaintiffs

---

[56] Rec. Doc. 38-1 at 8.

[57] *Id.*

[58] *Id.* at 9.

[59] Rec. Doc. 42 at 6 (citing 656 So. 2d at 640).

[60] *Id.* (citing 808 So. 2d at 569–70).

[61] Rec. Doc. 42 at 3–4.

[62] *Id.*

[63] *Id.*

10

assert that the baclofen toxicity resulted from Defendants' instructions to Dr. Cullom in consultation.

Considering the representations made during oral arguments, the Court finds that there are no disputed issues of fact. Plaintiffs' counsel agrees that Plaintiffs' claims are against only one healthcare provider.[64] Plaintiffs' counsel argues that Poirrier's injuries are severable, but he also acknowledges that there is a relationship between the alleged distinct injuries.[65] Plaintiffs' counsel states that this relationship exists because Poirrier was undergoing the same general form of treatment throughout the relevant time period.[66]

In *Turner v. Massiah*, the Louisiana Supreme Court found that a single cap applied to a situation where two health care providers committed separate torts when they both failed to correctly diagnose a patient's breast cancer.[67] The court determined that the damage, which was loss of chance of survival, "[was] not severable; it [was] indivisible."[68] The court reasoned, "The injury was indivisible because it could not be divided up into parts with each part traceable back to a specific delictual origin."[69]

Here, similar to *Turner*, where both torts were related to ongoing breast cancer treatment, Poirrier's injuries are all related to ongoing baclofen treatment. Moreover, Plaintiffs specifically

---

[64] Transcript of oral argument at 5.

[65] *Id.* at 6–7.

[66] *Id.*

[67] *Turner*, 656 So. 2d at 640.

[68] *Id.*

[69] *Id.*

11

acknowledge that Poirrier's baclofen toxicity is a result of the catheter dislodgment.[70] Plaintiffs argue that Poirrier could not tolerate the high dose of baclofen because the catheter was dislodged for a period of time.[71] Thus, although Defendants' consultation regarding the proper dosage of baclofen following the catheter reconnection may have been a separate act, or a separate tort, Poirrier's resulting injuries are traceable back to the same origin, as in *Turner*.

Moreover, Louisiana courts have only considered multiple caps in situations involving multiple defendants. In *Stuka v. Fleming*, Justice Dennis wrote a concurring opinion regarding the possibility of multiple caps.[72] He stated, "Whether a single limitation applies to damages caused by *plural defendants* may depend on such factors as whether the defendants engaged in concerted action, whether the damages are severable, or whether the damages may be apportioned between the tortfeasors."[73] Furthermore, in *Turner*, the Louisiana Supreme Court stated in dicta, "If the damage, or injury could have been divided into two parts, one part caused *by one defendant* and the other part caused *by the other* there would have been, in effect, two injuries. In that case, there having been two torts and two injuries, the question of two caps might have been present."[74]

Here, as stated above, Plaintiffs have acknowledged that Defendants are a single healthcare provider. Although it is unnecessary for this Court to determine whether a single healthcare provider could potentially be subject to multiple caps, the fact that Defendants are a single

---

[70] Rec. Doc. 42 at 4. Plaintiffs argue, "They should have known better, but they erroneously told Dr. Cullom that the dislodgement just happened, and that Chase could therefore tolerate a high dose. And because it had not just happened, as they should have well known, Chase was not prepared for the massive dose which they recommended."

[71] Rec. Doc. 42 at 4.

[72] *Stuka v. Fleming*, 89-1391 (La. 5/17/90); 561 So. 2d 1371, 1375 (emphasis added).

[73] *Id.*

[74] *Turner*, 656 So. 2d at 640 (emphasis added).

12

healthcare provider weighs against the severability of Poirrier's injuries in this case. This fact underscores the related nature of Defendants' actions as different steps of Poirrier's single baclofen treatment process.

Considering that Poirrier's injuries may be traced back to the same origin of the catheter dislodgment and that Defendants are a single healthcare provider, the Court finds that Defendants are subject to a single cap in this circumstance.

Accordingly,

**IT IS ORDERED** that "Defendants' Rule 56 Motion for Partial Summary Judgment"[75] is **GRANTED**.

**NEW ORLEANS, LOUISIANA**, this 22nd day of December, 2017.

                **NANNETTE JOLIVETTE BROWN**
                **UNITED STATES DISTRICT JUDGE**

---

[75] Rec. Doc.